# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# DOCKET NO. 2:14-cv-00019-GCM

| | |
|---|---|
| DONNA S. CALDWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| CAROLYN W. COLVIN, Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court upon Plaintiff's Motion for Summary Judgment (Doc. No. 11) and the Commissioner's Motion for Summary Judgment (Doc. No. 16). Having carefully considered such motions and reviewed the record, the Court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

### I.  Administrative History

Plaintiff filed an application for disability insurance benefits on January 28, 2011, alleging a disability onset date of August 15, 2003. Plaintiff's claim was denied both initially and on reconsideration. Subsequently, Plaintiff timely filed for a hearing before an Administrative Law Judge ("ALJ"), and ALJ John S. Lamb conducted a hearing on November 5, 2012 in Asheville, North Carolina. At that time, Plaintiff amended her alleged onset date to January 29, 2011.

The ALJ issued a decision on January 17, 2013 which was unfavorable to the Plaintiff, from which Plaintiff appealed to the Appeals Council. Plaintiff's request for review was denied

and the ALJ's decision thus became the final decision of the Commissioner of Social Security. Plaintiff timely filed this action on May 16, 2014 (Doc. No. 1), and the parties' motions are now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.     Factual Background

Because it appears that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.    Legal Standard

The Social Security Act, 42 U.S.C. § 405(g), limits this Court's review of a final decision of the Commissioner to whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence which a reasoning mind might accept as adequate to support a conclusion" and is "more than a mere scintilla . . . , but may be somewhat less than a preponderance." *Id*. at 1456; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The very language of section 405(g) precludes the Court from reviewing a final decision of the Commissioner *de novo*; it is the responsibility of the ALJ and not this Court to make findings of fact and to resolve conflicts of evidence. *See* 42 U.S.C. § 405(g); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court cannot substitute its judgment for that of the Commissioner, even if the Court would have decided differently, so long as the ALJ's decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456; *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim pursuant to the following five-step analysis:

(1) Whether the claimant is engaged in substantial gainful activity;

(2) Whether the claimant has a severe medically determinable impairment, or a combination of impairments that is severe;

(3) Whether the claimant's impairment or combination of impairments meets or medically equals one of the Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) Whether the claimant has the residual functional capacity ("RFC") to perform the requirements of his past relevant work; and

(5) Whether the claimant is able to do any other work, considering his RFC, age, education, and work experience.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v). In this case, the ALJ determined Plaintiff was not disabled at the fifth step of the sequential evaluation process.

## IV. Discussion

In his decision, the ALJ first concluded that Plaintiff had not engaged in substantial gainful activity since January 28, 2011, the application date. Tr. at 123. At the second step, the ALJ concluded that Plaintiff suffered from severe impairments, including osteoarthrosis with pain in hands, feet, back and hip, status-post left shoulder surgery on May 10, 2011, depression, and panic disorder without agoraphobia. *Id.* At the third step, the ALJ found that the Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. at 123.

The ALJ then found that Plaintiff retained the residual functioning capacity to perform light work as defined in 20 C.F.R. § 404.1567(c), except for the following: she requires a sit/stand

3

option (as defined by the vocational expert) and is limited to simple, routine and repetitive tasks with occasional contact with public and coworkers in a low stress setting with only occasional changes in work setting, and only occasional decision making. Tr. at 125. In making this finding, the ALJ considered all symptoms and the extent to which these symptoms could reasonably be accepted as consistent with objective medical evidence, and other evidence, as required by 20 C.F.R. §§ 404.1529 and 416.929. *Id.* While the ALJ found that the Plaintiff's impairments could reasonably be expected to cause some pain or discomfort, he determined that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. Tr. at 126.

At the fourth step, the ALJ found the claimant had no past relevant work experience. Tr. at 128. However, at the fifth step, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that the Plaintiff could perform, including sorter, inspector, and hand packager. Tr. at 129.

Plaintiff asserts two issues for review—(1) whether the ALJ properly weighed opinion evidence; and (2) whether the ALJ properly assessed Plaintiff's RFC.

**A. The ALJ properly weighed opinion evidence.**

Plaintiff first alleges that the ALJ failed to properly weigh the opinion of the psychological consultative examiner by bifurcating his opinion, and also by failing to weigh the opinion of a consultative examiner in occupational therapy on manipulative limitations.

1. <u>The ALJ properly assessed the opinion of Dr. Krych</u>

Plaintiff argues that the ALJ did not properly consider the state agency consultative opinion of Dr. Raymond Krych. The ALJ stated regarding this report that:

4

> Consultative psychologist, Dr. Krych, conducted a psychological evaluation in September of 2011 and diagnosed depression and panic disorder without agoraphobia (14F). According to Dr. Krych, claimant is able to understand, retain and follow instructions, but has some difficulty sustaining attention (14F).
>
> . . .
>
> Likewise, significant weight is assigned to the portion of the opinion of examining psychologist, Dr. Krych, finding claimant has some difficulty in sustaining attention, but is able to understand, retain and follow instructions (14F). This opinion is consistent with record as a whole and supported by relevant evidence. On the other hand, no weight is assigned to Dr. Krych's statement that it is "unlikely" that claimant could tolerate the stress/pressures associated with day to day work activity (14F), as this portion of his opinion is not supported with explanation and inconsistent with other evidence, including Dr. Krych's own report.

Tr. 127-128. The ALJ's authority to weigh and reconcile inconsistencies in the evidence extends to opinions from medical sources. *See* 20 C.F.R. § 416.827(c); *Hays*, 907 F.2d at 1456. An ALJ is required to consider the opinion provided by a medical source, and if there is a conflict between the RFC assessment and medical opinion, the ALJ must explain why the opinion was not adopted. SSR 96-8P (S.S.A.), 1996 WL 374184. More weight will be given to an opinion when the physician has presented "relevant evidence to support an opinion, particularly medical signs and laboratory findings." 20 C.F.R. § 416.927(c)(3).

Dr. Krych is not entitled to controlling weight because he is a consultative psychologist rather than a treating physician. The ALJ did give significant weight to one portion of his opinion, but gave no weight to another portion, which stated it is unlikely the Plaintiff could tolerate the stress associated with day to day work activity. Tr. at 127-28. The ALJ explains in his decision, as he is required to do, that the reason he gave no weight to this portion of Dr. Krych's opinion is because the opinion was not supported with explanation. *Id.* "The better an explanation a source

provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 416.927(c)(3). Here there was no explanation, and it is reasonable to say that, at the most, limited weight would be given to this portion of the opinion. The ALJ's statement that there is no explanation is enough justification for the lack of weight given here.

The ALJ also determined that this particular portion of the opinion was inconsistent with other evidence of record, including Dr. Krych's own report. *Id.* For instance, Dr. Krych determined Plaintiff had a Global Assessment of Functioning (GAF) of 50 to 55. Tr. at 486. This is a GAF of moderate difficulty in social, occupational, or school functioning (e.g., conflicts with peers or co-workers). Diagnostic and Statistical Manual of Mental Disorders, p.34, Fourth Edition (revised 2000) (DSM-IV). A GAF level of 41-50 indicates serious impairments and includes the inability to keep a job. Thus, while "50" borders on a serious symptom, the actual GAF opinion of Dr. Krych, of 50 to 55, is an opinion of only moderate symptoms. A GAF of 50 to 55 is not an opinion that someone is so affected that they are "unable to keep a job" as would be suggested by a GAF of 41 to 50. Without any further explanation for why Plaintiff could not "tolerate the stress/pressures associated with day to day work activity," this portion of the opinion is in direct conflict with the GAF determination made by Dr. Krych himself.

In addition, other evidence in the record indicated that Plaintiff was coping with her stressors. Physicians noted that she was negative for anxiety and depression while she was on medication. Tr. at 914, 926, 929. It was also noted that while some of her relationships were stressed, she was doing well with them while on Cymbalta. Tr. at 873. "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). This evidence suggests, contrary to Dr. Krych's opinion that Plaintiff

would be unlikely to tolerate work activity, that her stressors were being controlled by medications.

Further, the ALJ considerably minimized the job stress and pressure that would be attributed to a position for Ms. Caldwell when he stated her RFC was limited to "simple, routine and repetitive tasks with occasional contact with the public and with coworkers in a low stress setting with only occasional changes in work setting and only occasional decision making." Tr. at 125. With the inconsistencies and lack of explanation in Dr. Krych's opinion, as well as the ALJ already accounting for Plaintiff's need for lower work stressors and pressures, this Court finds the ALJ properly assessed the opinion of Dr. Krych.

    2.  <u>The ALJ properly assessed Plaintiff's Upper Extremity</u>

As previously discussed, the ALJ's authority to weigh and reconcile inconsistencies in the evidence extends to opinions from medical sources. *See* 20 C.F.R. § 416.827(c); *Hays*, 907 F.2d at 1456. "Opinions from . . . medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03P (S.S.A.), 2006 WL 2329939. Further, if a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross*, 785 F.2d at 1166; *see also* 20 C.F.R. § 416.930.

Contrary to Plaintiff's assertion that the ALJ did not properly assess her upper extremity based on the opinion of an Occupational Therapist, the ALJ actually noted the opinion specifically in his decision. Upon review, he chose not to give it great weight while citing several exhibits for his determination. Tr. at 126. One exhibit contained the medical records of the Plaintiff post arthroscopy surgery on her shoulder in which Plaintiff was examined by Robin Pope, PA-C in the

7

office of Plaintiff's orthopedic surgeon. Tr. at 613-616. Ms. Pope found Plaintiff's shoulder to have appropriate strength and to have a strong grip and pinch. Tr. at 613. In addition, her last examination indicated Plaintiff had no tingling or numbness. *Id.* These records alone conflict with the occupational therapist's notes that Plaintiff "would have difficulty performing any task that involved grasping with her hands and repetitive shoulder range motion." Tr. at 559.

Further, the other evidence of record indicates that though Plaintiff complained of low back pain in subsequent visits after her shoulder surgery and also of depression and other ailments, she did not complain of issues regarding her shoulder and hands. Tr. at 903-75. Ms. Pope's notes post-surgery indicate that Plaintiff was doing well and that her recovery was expected to progress for at least another six to twelve months past the last visit. Tr. at 613. Even if Plaintiff did not have full range at that time, the continued treatment prescribed to Plaintiff during that visit was to aid in the full recovery. Due to Plaintiff's ability to reasonably control her symptoms due to medication and treatment, and also because the Occupational Therapist's opinion was inconsistent with the rest of the record, this Court finds the ALJ properly assessed Plaintiff's upper extremities.

Upon consideration of all the evidence in the record, this Court finds the ALJ had more than enough evidence in the record upon which to base his decision. As such, this Court finds the ALJ properly weighted opinion evidence.

### B. The ALJ's RFC was supported by substantial evidence.

Plaintiff further alleges that the ALJ improperly assessed her subjective pain allegations by inadequately reviewing the record, and that the ALJ should have considered a prior 2010 ALJ determination.

1. The ALJ properly assessed Plaintiff's pain allegations.

"Under [the Social Security] regulations, the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 594; *see also* 20 C.F.R. § 416.929(a). "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and *which could reasonably be expected to produce the pain or other symptoms alleged*." *Craig*, 76 F.3d at 594 (emphasis in original); see also 20 C.F.R. § 416.929(b). Second, the "intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Craig*, 76 F.3d at 595; *see also* 20 C.F.R. § 416.929(c). Plaintiff takes issue with the ALJ's determinations at *Craig*'s second step.

When evaluating the second step, the intensity and persistence of a claimant's pain, etc., it is not only proper, but required, to consider medical and laboratory findings. "In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you." 20 C.F.R. § 416.929(a). When evaluating pain, the Fourth Circuit has noted that "pain is not disabling *per se*, and subjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof." *Craig*, 76 F.3d at 592 (*quoting Gross*, 785 F.2d at 1166). However, the lack of objective medical evidence is not determinative, and a claimant's subjective perception of pain and other symptoms can be sufficient to support an ALJ's finding of disability. *Hines v. Barnhart*, 453 F.3d 559, 564-65 (4th Cir. 2006). That being said, objective evidence can be crucial in an ALJ's evaluation of the intensity and persistence of the claimant's symptoms, and to the extent that a claimant's complaints are inconsistent with the available evidence, the ALJ need not accept them. *See id*. at 565, n.3 (citing *Craig*, 76 F.3d at 595).

9

Here, Plaintiff's main pain allegation stems from alleged shoulder and arm pain. Plaintiff had shoulder surgery on May 17, 2011. Tr. at 613. At just three months after her surgery, Ms. Pope from Sylva Orthopedic noted that Plaintiff had appropriate strength and a strong grip and pinch in her shoulder. *Id.* While she was not up to full extension at her five month post-surgery appointment, the report indicated Plaintiff could push further than was noted in the opinion, and was expected to continue to improve. *Id.* It was also noted that she could "place her hand behind back of head and in small of back," and that the shoulder was grossly stable. *Id.* Further, Ms. Pope stated she expected "to see continued progress for at least 6-12 months." *Id.* Therefore, while her range of motion in her surgically repaired shoulder was not full, it did show nearly full range only five months post-surgery. *Id.* In addition, Plaintiff's other arm had no limitations at all as indicated in Ms. Pope's report, and a series of office visits in 2012 at Wellspring Family Practice show no indications that Plaintiff still had complaints about her shoulder and grip pain. Tr. at 903-29. In short, there was no significant limitation in her arm either from range of motion or pain.

Ms. Caldwell makes note of an unrelated elbow surgery in 2010, a year before her shoulder surgery. This surgery was prior to Ms. Caldwell's alleged onset date of January 29, 2011. Also, the records indicate that Ms. Caldwell fully recovered from that surgery. For example, on April 26, 2010, which was a month post the March 23 elbow surgery, Ms. Pope noted that Ms. Caldwell still had some tingling and numbness in the area of the surgery, but Ms. Caldwell reported that she thought that was already resolving (Tr. 268). In that same visit, Ms. Caldwell also showed full extension, excellent flexion to place fingers on shoulder, full supination and pronation, strong grip and pinch; Ms. Caldwell had no pain with palmarflexion or dorsiflexion of the wrist. In short, Ms. Caldwell was doing quite well long before she alleged she became disabled. The record during

the appropriate time also did not show any issues with this elbow again.

With the evidence of record strongly supporting that Plaintiff had nearly full rotation just five months post-surgery with the expectation of continued progression in the following twelve months, and no indication in her 2012 medical records of continued issues, this Court finds the ALJ properly assessed Plaintiff's pain allegations.

### 2. There was no need to consider the ALJ's prior opinion.

The Plaintiff's final argument is that the ALJ should have discussed a prior 2010 determination. The Fourth Circuit has stated it is improper to *increase* a claimant's RFC during a very short period of time without explanation. *See Albright v. Commissioner*, 174 F.3d 473 (4th Cir. 1999); *Lively v. Secretary of HHS*, 820 F.2d 1391 (4th Cir. 1987). In further notes that as the time line widens, the presumption that an RFC would not improve goes away. *Albright*, 174 F.3d 473.

The prior determination to which Plaintiff refers was made two years earlier by the same ALJ and made the same RFC determination. The ALJ decision herein did not increase Plaintiff's RFC. There was no requirement for the same ALJ to explain why the same RFC was found two years apart.

Upon consideration of all the evidence in the record, this Court finds the ALJ had more than enough evidence in the record upon which to base his decision. As such, this Court finds the ALJ's decision was properly supported by substantial evidence.

## V. Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's Motion and Brief, the Commissioner's Motion and Brief, and Plaintiff's

assignments of error. Review of the entire record reveals that the ALJ's decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456; *Coffman*, 829 F.2d at 517. Having found that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *see Hays*, 907 F.2d at 1456, Plaintiff's Motion for Summary Judgment is denied, the Commissioner's Motion for Summary Judgment is granted, and the decision of the ALJ is affirmed.

## ORDER

**IT IS, THEREFORE, ORDERED** that

(1) the ALJ's decision is **AFFIRMED**;

(2) the Plaintiff's Motion for Summary Judgment (Doc. No. 11) is **DENIED**;

(3) the Commissioner's Motion for Summary Judgment (Doc. No. 16) is **GRANTED**; and

(4) The Clerk of Court is directed to **CLOSE THIS CASE**.

Signed: September 1, 2015

Graham C. Mullen
United States District Judge